NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
JOSEPH F. LAFFEY,                       :
                                        :
                 Plaintiff,             :
                                        :          Civil Action No. 05-2796 (JAG)
             v.                         :
                                        :              **OPINION**
UNITED STATES MARSHAL JAMES             :
PLOUSIS, et al.,                        :
                                        :
                 Defendants.            :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss by Defendants United

States Marshal James Plousis ("Plousis") and Chief Deputy United States Marshal Donald

Rackley ("Rackley," and, collectively with Plousis, the "Individual Marshal Defendants").  In a

letter dated April 16, 2007, pro se Defendant Hansel S. Torriero ("Torriero") joined in this

motion.  For the reasons set forth below, this motion shall be granted.

## I.  BACKGROUND

**A.      The Parties**

Plaintiff Joseph Laffey ("Plaintiff") is a Court Security Officer ("CSO") at the United

States District Court in Camden, New Jersey.  (Compl. ¶ 4.)  Plaintiff works for MVM, Inc.

("MVM," and, collectively with Torriero and the Individual Marshal Defendants, the

"Defendants"), a security and staffing company that contracts with the United States Marshals

Service ("USMS") to provide security officers for the federal courts in New Jersey.  (Id. at ¶ 6.)

Beginning in 2002, Plaintiff held the position of Lead CSO.  (Id. at ¶ 11.)  Since 2003, Plaintiff has also served as President of the Security Officers, Police & Guards Union, Local No. 1536 (the "Union"), which represents security officers in the federal district courts in Newark, Trenton, and Camden, New Jersey.  (Id. at ¶¶ 4, 12.)  Plousis is the United States Marshal for the District of New Jersey, and Rackley is the Chief Deputy United States Marshal for the District of New Jersey.  (Id. at ¶ 5, 9.)  Finally, Torriero is a CSO who started out by working part-time at the federal district courts in Newark, Trenton, and Camden, New Jersey.  (Id. at ¶¶ 7, 13-15.)

**B.**     **The Alleged Retaliatory Conduct**

On or around October 31, 2002, Torriero applied for and secured a full-time position as a CSO at the federal district court in Newark, New Jersey.  (Id. at ¶ 16.)  Thereafter, Torriero applied for a full-time position at the federal district court in Camden, New Jersey.  (Id. at ¶ 18.)  Plaintiff, speaking on behalf of the Union, informed MVM and Torriero that Torriero did not have the seniority required under the collective bargaining agreement to be eligible for the full-time position in Camden.  (Id.)  In response, Torriero hired a private attorney, and in October of 2003 initiated a lawsuit, naming Plaintiff and MVM, among others, as defendants.[1]  (Id. at ¶¶ 19-20.)

The Complaint then alleges that Torriero, with and through the USMS, Plousis, and Rackley, "engaged in a pattern of harassment and intimidation" against Plaintiff in retaliation for the statement he made on behalf of the Union.  (Id. at ¶ 22.)  Specifically, the Complaint alleges the following actions:

---

[1]  "Officer Laffey was dismissed as a defendant in the suit upon application of his motion on January 12, 2004."  (Id. at ¶ 21.)

2

a.      Officer Torriero would consistently tell Officer Laffey's supervisor, Carl Piro[,] that Officer Torriero was going to get Officer Laffey arrested and fired.

b.      Supervisor Deputy Marshall [sic] Mickey Peas told Officer Laffey that Chief Marshall [sic] Donald Rackley wanted Torriero to work in Camden and that he blamed Officer Laffey for the fact that Torriero could not work in Camden, and that Rackley wanted Deputy Marshall [sic] Mickey Peas to "do something" about Officer Laffey.

c.      Contract Manager Flavio Lorenzoni, an employee of MVM, Inc.[,] called Officer Laffey in and asked him if he would tell the Union how much money "his lawsuit" was costing both the Union and MVM, Inc.  Officer Laffey responded that the lawsuit was brought by Officer Torriero, and not by him. Chief Rackley, after depositions were taken in Officer Torriero's lawsuit in September 2004, ordered Carl Piro to do something about Officer Laffey or have something done to him.

d.      On November 23, 2004, Carl Piro told Officer Laffey that things would be getting worse and worse until "they" (meaning Marshall [sic] Plousis, Chief Rackley, Officer Torriero, MVM, Inc.) get you."

e.      Contracting Officer Technical Representative ("COTR") James Elcik . . . told Laffey that Chief Rackley was upset with him because he would not allow Torriero to transfer.

f.      On or about October 18, 2004, COTR James Elcik, as a result of having pressure put on him to find something about which to discipline Officer Laffey[,] told Officer Laffey that, as a lead CSO, he was handling the timesheets improperly, even though these timesheets had been handled in the same manner for approximately two years.

g.      MVM, Inc. continued a campaign of harassment by putting pressure on Officer Laffey throughout 2004 by looking for minor rule violation[s] and/or chastising Officer Laffey for carrying out his work duties in a way that it deemed unacceptable, even though Officer Laffey had not changed his pattern or habits of working the entire time he had been lead

3

CSO.

h.     In September 2004, COTR Elcik told Officer Laffey he was no longer to come to security meetings with department heads and the Federal Judges at the Camden Courthouse.

(Compl. ¶ 23.)

In January of 2005, Plousis met with COTR James Elcik and asked "what are we going to do now," which the Complaint alleges referred to punishing Plaintiff for speaking out against Torriero's transfer to Camden.  (Id. at ¶ 29.)  On or about January 11, 2005, MVM initiated an investigation into Plaintiff's alleged violations of the CSO Performance Standard, upon the request of the USMS.  (Id. at ¶ 30.)  A report dated January 19, 2005 dismissed most of the allegations against Plaintiff.  (Id. at ¶ 31.)  Nevertheless, Plaintiff was suspended without pay from January 11, 2005 to January 27, 2005, and was removed from his position as lead CSO as of February of 2005.  (Id. at ¶ 32.)

Plaintiff filed the instant Complaint on May 31, 2005, alleging that he was suspended and demoted in retaliation for Plaintiff's vocal opposition to Torriero's transfer.  Plaintiff's first cause of action, raised against the Defendants in their individual capacities under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleges that Plaintiff suffered a violation of his First Amendment rights.  The second cause of action asserts that MVM violated the New Jersey Conscientious Employee Protection Act (NJ CEPA), codified at N.J. STAT. ANN. §§ 34:19-1 et seq.  However, in an Order dated April 5, 2006, this Court dismissed the second cause of action, noting that Plaintiff agreed to withdraw the NJ CEPA claim with prejudice.

C.    <u>**Service of Process**</u>

       Plaintiff served the Individual Marshal Defendants on September 9, 2006 by delivering copies of the Summons and Complaint to "a member of the Marshal's service . . . at the Marshal's office at the Federal Courthouse at 50 Walnut Street, Newark, New Jersey." (Certif. of Peter H. Demkovitz (Demkovitz Certif.) ¶ 6.)  According to Plaintiff, this employee at the Marshal's office affirmatively stated that he was authorized to accept service, "and stated that 'We [the Marshal's Service] had been expecting this.'" (<u>Id.</u>)

       After the Individual Marshal Defendants failed to answer or otherwise respond to the Complaint, Plaintiff filed a request for entry of default.  (<u>Id.</u> at ¶¶ 11, 13-14.)  The Clerk of the Court filed an entry of default on October 26, 2006.  That same day, the Individual Marshal Defendants filed a letter stating that Plaintiff never properly effected service.  (<u>Id.</u> at ¶ 15.)

       On December 11, 2006, the parties met before Judge Arleo for a status and settlement conference.  At that conference, Plaintiff raised the Individual Marshal Defendants' dispute over the propriety of service of process.  (<u>Id.</u> at ¶ 16.)  Judge Arleo responded by suggesting to Plaintiff's counsel that "it might be easier and more expedient just to personally serve Defendants Marshal James Plousis and Chief Marshal Donald Rackley again."  (<u>Id.</u>)

       On January 5, 2007, Plaintiff attempted to serve the Individual Marshal Defendants again by leaving copies of the Summons and Complaint with another employee at the Marshal's Office.  (<u>Id.</u> at ¶ 17.)  In a conversation on February 22, 2007, which counsel for Plaintiff memorialized in a letter to opposing counsel dated February 23, 2007, counsel for the Individual Marshal Defendants acknowledged to Plaintiff's counsel that service was effectively executed on January 5, 2007.  (<u>Id.</u> at ¶ 18; Demkovitz Certif. Exh. A.)

## II. <u>STANDARD OF REVIEW</u>

**A.**     <u>Rules 12(b)(2) and 12(b)(5)</u>

The Individual Marshal Defendants argue that this Court lacks personal jurisdiction because Plaintiff did not properly serve the Summons and Complaint in accordance with Federal Rule of Civil Procedure 4.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied."  <u>Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987).  Under Rule 12(b)(5), a party may file a motion asserting insufficient service of process as a defense.  "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity."  <u>Carpenter v. Young</u>, No. 04-927, 2004 WL 1858353, at *2 (E.D. Pa. Aug. 3, 2004) (internal quotations and citations omitted).

**B.**     <u>Rule 12(b)(6)</u>

The Individual Marshal Defendants also argue in the instant motion that the Complaint should be dismissed under Rule 12(b)(6).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  <u>See</u> <u>In re Warfarin Sodium</u>, 214 F.3d 395, 397-98 (3d Cir. 2000).  The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165, 173 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), this Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  <u>See</u>

6

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). However, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340 (2d ed. 1990)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Twombly, 127 S. Ct. at 1964-65.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Id. at 1965.

# III. ANALYSIS

## A. Motion To Dismiss Under Rules 12(b)(2) and 12(b)(5)

The Individual Marshal Defendants argue that Plaintiff failed to effect service upon them, in accordance with Rule 4, for two reasons. First, Plaintiff's delivery of the Summons and Complaint to an employee at the Marshal's Office did not conform with the requirements of Rule 4(e) because the employee was not an agent authorized by appointment or by law to receive service of process on behalf of the Individual Marshal Defendants. Second, Plaintiff's failure to deliver the Summons to the United States Attorney and the Attorney General of the United States violated Rule 4(i)(3).

### 1. Rule 4(e)

A plaintiff must serve upon the defendant a copy of the summons and complaint within 120 days after the complaint is filed. FED. R. CIV. P. 4(m). Rule 4(e) states that an individual may be served by

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction . . . ; or
> (2) doing any of the following:
>     (A) delivering the summons and complaint to the individual personally;
>     (B) leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode, with someone of suitable age and discretion who resides there; or
>     (C) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process.

The New Jersey rule governing service of process upon an individual is akin to the three options outlined in Rule 4(e)(2). See N.J. R. SUPER. TAX SURR. CTS. CIV. R. 4:4-4(a)(1).

The Individual Marshal Defendants assert, and Plaintiff does not disagree, that copies of

the Summons and Complaint were given to an employee at the Marshal's office on September 9, 2005.  (Demkovitz Certif. ¶¶ 6, 13; Individual Marshal Def. Reply Br. 1-2.)  Such action does not satisfy Rules 4(e)(2)(A) or (B), thereby leaving Rule 4(e)(2)(C) as the only avenue through which Plaintiff may have effected service.  See Gipson v. Bass River Twp., 82 F.R.D. 122, 125 (3d Cir. 1979) ("Clearly, leaving process at defendant's place of employment does not qualify under the dwelling house or place of abode method."); Dunkley v. Rutgers, No. 06-5762, 2007 WL 2033827, at *2 (D.N.J. July 11, 2007) ("[A] movant's place of employment does not qualify under the dwelling house or usual place of abode method.").

Neither party disputes that the employee at the Marshal's office does not fall within the ambit of an agent authorized by appointment or by law to receive service of process.  However, Plaintiff argues that the delivery of the Summons and Complaint satisfied Rule 4(e)(2)(C) because the employee at the Marshal's Office had "apparent authority" to accept service.  Good faith reliance on the apparent authority of an individual to accept service on behalf of a defendant may satisfy the service of process requirement set forth in Rule 4(e)(2)(C).  See Blair v. City of Worcester, 2006 WL 1581582, at *4 (D. Mass. Mar. 13, 2006).  "[T]here must be evidence that defendant himself intended to confer such authority on the agent."  Id.

Plaintiff has not satisfied its burden of demonstrating that the employee at the Marshal's Office had apparent authority to accept service on behalf of the Individual Marshal Defendants.  The Individual Marshal Defendants did not bestow upon the employee authorization to accept service of process.  Nor did the Individual Marshal Defendants act in a manner which implied that the employee at the Marshal's Office was authorized to accept service.  See Elkins v. J.A. Broome, 213 F.R.D. 273, 276 (M.D.N.C. 2003) (holding that duty officer at police station did not

9

have apparent authority to accept service of process on behalf of defendant police officer because defendant never made any personal representations indicating that the duty officer was an authorized agent).  Even if the employee at the Marshal's Office stated that he was authorized to accept service (Demkovitz Certif. ¶ 6), "apparent authority may not be created by acts of the agent . . . ."  Blair, 2006 WL 1581582, at *4.

Nevertheless, Plaintiff's failure to effect service properly in August 2006 does not mandate dismissal of the Complaint. "If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*."  FED. R. CIV. P. 4(m) (emphasis added).  Plaintiff raised the issue of service of process before Judge Arleo during the December 2006 status and settlement conference, and received an oral directive from Judge Arleo to serve the papers a second time.  Plaintiff responded by effecting service less than a month later.  Judge Arleo's statement may be viewed as an exercise of this Court's discretion under Rule 4(m) to direct proper service of process.

Plaintiff contends that service was effected on January 5, 2007 by delivering a copy of the Summons and Complaint to a different employee at the Marshal's Office, but sets forth no information showing that this employee is an agent authorized to accept service on behalf of the Individual Marshal Defendants.  However, the Individual Marshal Defendants did not challenge the propriety of the January 5, 2007 service of process.  Indeed, in a letter from Plaintiff's attorney dated February 23, 2007, he confirms that counsel for the Individual Marshal Defendants acknowledged in an earlier conversation that service was effectively executed on January 5, 2007.  (Demkovitz Certif. Exh. A.)  The Individual Marshal Defendants have not

presented any evidence denying that they consented to the propriety of service in the February 22, 2007 conversation.

In essence, the Individual Marshal Defendants consented to the service of process performed on January 5, 2007, then argued for dismissal of this case under Rules 12(b)(2) and (5) less than two months later.  This inconsistency forecloses the ability of the Individual Marshal Defendants to argue for dismissal successfully based on insufficient service of process.[2]

    2.    <u>Rule 4(i)(3)</u>

The Individual Marshal Defendants also argue that Plaintiff did not serve the Summons and Complaint properly in accordance with Rule 4(i)(3) because, although Plaintiff served a copy of the Complaint on the United States Attorney and the Attorney General, Plaintiff failed to include a copy of the Summons in the delivery.  As stated <u>supra</u> in Section III, A, 1, counsel for the Individual Marshal Defendants cannot orally consent to the propriety of service of process and then later refute the sufficiency of service.[3]  Dismissal of the Complaint, therefore, is not warranted on these grounds.

---

[2]  This Court also notes the absence of a docket entry reflecting that Plaintiff filed proof of service.  Rule 4(l)(1) states that, "[u]nless service is waived, proof of service must be made to the court."  However, such "[f]ailure to prove service does not affect the validity of service."  FED. R. CIV. P. 4(l)(3).

[3]  Notwithstanding their acknowledgment of proper service, however, the Individual Marshal Defendants would likely fail on this argument.  In <u>Armstrong v. Sears</u>, the Second Circuit held that plaintiffs filing a <u>Bivens</u> action need only perform service pursuant to Rule 4(e). 33 F.3d 182, 187 (2d Cir. 1994).  While the Third Circuit has not yet ruled on this issue, this Court is persuaded by the Second Circuit's opinion in <u>Armstrong</u> that Plaintiff was not required to serve a copy of the Complaint and the Summons on the United States Attorney and the Attorney General.

**B.**      <u>**Motion To Dismiss Under Rule 12(b)(6)**</u>

The Individual Marshal Defendants argue that the Complaint should be dismissed because MVM is a private company that was not acting under color of federal law, for the purposes of a <u>Bivens</u> action, when it terminated Plaintiff's employment.  <u>Bivens</u> provides plaintiffs with an implied private action for damages against federal officers alleged to have violated their constitutional rights.  <u>Bivens</u>, 403 U.S. at 392.  "[T]he law of <u>Bivens</u> actions has closely tracked developments in the law governing civil rights actions under § 1983."  <u>Johnstone</u> <u>v. United States</u>, 980 F. Supp. 148, 152 (E.D. Pa. 1997); <u>see also</u> <u>Thomason v. Norman E.</u> <u>Lehrer, P.C.</u>, 182 F.R.D. 121, 128 (D.N.J. 1998).  Consequently, a plaintiff may not sustain a <u>Bivens</u> action against a defendant without showing that the defendant acted under color of federal law when depriving plaintiff of his constitutional rights.  <u>Bivens</u>, 403 U.S. at 392 (1971); <u>Browning v. Clinton</u>, 292 F.3d 235, 250 (D.C. Cir. 2002).

A private corporation is not a proper defendant in a <u>Bivens</u> action.  <u>Corr. Svcs. Corp. v.</u> <u>Malesko</u>, 534 U.S. 61, 70-71 (2001) (declining to apply <u>Bivens</u> to a claim against a private corporation alleged to be acting under color of federal law); <u>Holland v. Pinkerton Sec.</u>, 68 F. Supp. 2d 282, 283-84 (S.D.N.Y. 1999); <u>Shannon v. Gen. Elec. Co.</u>, 812 F. Supp. 308, 323 (N.D.N.Y. 1993).  Hence, Plaintiff cannot sustain a <u>Bivens</u> claim against MVM.[4]

The remaining issue is whether Torriero and the Individual Marshal Defendants can be held liable in a <u>Bivens</u> action for allegedly urging MVM to suspend and demote Plaintiff.  The Individual Marshal Defendants are officers of the USMS, and thus clearly act under color of

---

[4]  Because MVM did not join in the Individual Marshal Defendants' motion to dismiss the Complaint, this Court cannot dismiss the <u>Bivens</u> claim raised against MVM in the First Cause of Action.

federal law.[5]  However, neither Torriero nor the Individual Marshal Defendants were directly involved in the suspension or demotion of Plaintiff.  Moreover, Plaintiff has not alleged in the Complaint that Torriero or the Individual Marshal Defendants had any control over the disciplinary actions executed by MVM against CSOs.  Cf. Schatzman v. Martin Newark Dealership, Inc., 158 F. Supp. 2d 392, 401 (D. Del. 2001) (holding that plaintiff could not maintain mixed motive retaliatory discharge action against employer based on co-worker's efforts to get plaintiff fired, which included fabricating the grounds that ultimately led to plaintiff's termination, because the co-worker had no authority to terminate plaintiff).  Without authority over Plaintiff's discipline, Torriero and the Individual Marshal Defendants had no hand in the alleged deprivation of Plaintiff's First Amendment rights.

## IV.  CONCLUSION

For the reasons set forth above, the Individual Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) shall be granted.  The Bivens claim against Torriero and the Individual Marshal Defendants, as expressed in the First Cause of Action in the Complaint, is dismissed without prejudice.

Dated: January 30, 2008

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[5]  This Court need not decide whether Torriero, a private individual who is directly employed by MVM, constitutes a state actor because Torriero, like the Individual Marshal Defendants, had no authority or control over Plaintiff's disciplinary punishment.