<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |
|---|---|
| JOSEPH F. LAFFEY, : | |
| Plaintiff, : | |
| : | Civil Action No. 05-2796 (JAG) |
| v. : | |
| : | **OPINION** |
| UNITED STATES MARSHAL JAMES : | |
| PLOUSIS, <u>et al.</u>, : | |
| Defendants. : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion for summary judgment, pursuant to FED. R. CIV. P. 56(c), by defendant MVM, Inc. ("MVM"). For the reasons set forth below, this motion shall be granted.

## I. BACKGROUND

Plaintiff Joseph Laffey ("Plaintiff"), who has been a Court Security Officer (a "CSO") since 1988 and had been a Lead CSO since 1999, began working for MVM[1] on October 1, 2001.[2] (Def. Statement of Undisputed Facts ("SUF") ¶¶ 1-3.) From 2003 until April of 2006, Plaintiff was president of SOPGU Local 1536 (the "Union"), a union that represents the CSOs employed

---

[1] The Complaint states that MVM "is a security and staffing company that provides project services for [f]ederal [g]overnment agencies, and contracts to provide security officers for the [f]ederal courts in the District of New Jersey . . . ." (Compl. ¶ 6.)

[2] Plaintiff was not employed by the U.S. Marshals Service (the "USMS"). (Def. SUF ¶ 64.) MVM, and not the USMS, provided Plaintiff's wages and benefits. (Def. SUF ¶ 70.)

at the federal courts in New Jersey.  (Def. SUF ¶¶ 25-26.)

A.  **Plaintiff's Alleged Violation of Workplace Standards**

As part of his employment, Plaintiff received and signed the MVM Standards of Conduct (the "Standards of Conduct") on September 28, 2001.[3]  (Def. SUF ¶ 4.)  That same day, Plaintiff also received the USMS's Court Security Officer's Standards of Performance (the "Standards of Performance").  (Def. SUF 9.)  Plaintiff understood that the Standards of Conduct and the Standards of Performance applied to him, and that he could be terminated for violating them.  (Def. SUF ¶ 8.)

While Plaintiff worked for MVM, his shift was scheduled to run from 7:00 a.m. to 3:30 p.m.  (Def. SUF ¶ 20; Pl. SUF ¶ 20.)  Plaintiff worked from 6:00 a.m. to 2:30 p.m., but marked on the sign-in sheet that he had worked from 7 a.m. to 3:30 p.m.  (Def. SUF ¶¶ 21-22.)  However, Plaintiff was aware that, during various time periods, four other CSOs worked from 6:00 a.m. to 2:30 p.m. instead of their assigned shift of 7:00 a.m. to 3:30 p.m.  (Def. SUF ¶ 24.)

B.  **The Alleged Retaliatory Conduct**

In August of 2003, Hansel Torriero ("Torriero"), a full-time CSO for MVM in Newark, New Jersey, applied for a transfer from Newark to Camden, New Jersey.  (Def. SUF ¶¶ 27-28.)  In his capacity as president of the Union, Plaintiff announced that, based on past practices, the full-time CSO position in Camden had to be posted at the Camden site before CSOs at other locations in New Jersey could apply.  (Def. SUF ¶ 29.)  In August of 2003, the majority of the CSOs in the District of New Jersey voted in favor of continuing this past practice.  (Def. SUF ¶

---

[3] Plaintiff received and signed an updated version of the Standards of Conduct on November 6, 2003.  (Def. SUF ¶ 15.)

30.) As a result of this vote, Torriero did not secure the full-time CSO position in Camden. (Def. SUF ¶ 31.) Because he did not receive the full-time CSO position in Camden, Torriero filed a lawsuit in October of 2003 against MVM, the Union, Plaintiff, and Ed Hayes, then general counsel for MVM. (Def. SUF ¶ 32.)

On December 30, 2004, James Elcik ("Elcik"), the Contracting Officer's Technical Representative for the USMS in the District of New Jersey, wrote a letter to the USMS headquarters alleging that Plaintiff had violated several performance standards. (Def. SUF ¶ 33.) On January 10, 2005, Sheryl Pierce, the Contracting Officer of Judicial Security Contracts for the USMS, wrote a letter to MVM requesting that it investigate the allegations raised by Elcik against Plaintiff. (Def. SUF ¶ 34.) Flavio Lorenzoni ("Lorenzoni"), then the Third Circuit Project Manager for MVM, investigated the allegations against Plaintiff, which included reviewing video of Plaintiff arriving at and leaving the courthouse on five days, and interviewing Plaintiff[4] and CSO Robert Kirkbride.[5] (Def. SUF ¶¶ 39-41.) On January 11, 2005, Lorenzoni suspended Plaintiff for ten days without pay. (Def. SUF ¶ 42.)

---

[4] The parties dispute the conclusion reached by Lorenzoni after interviewing Plaintiff. MVM contends that "Plaintiff admitted to working a shift that was different from his assigned shift." (Def. SUF ¶ 40.) However, Plaintiff denies this statement, and emphasizes that "the past practice had been to wrok from 6 a.m. to 2:30 p.m." (Pl. SUF ¶ 40.)

[5] During Lorenzoni's investigation of Plaintiff, Lorenzoni learned that CSO Robert Kirkbride ("Kirkbride") also worked hours different from those noted on the sign in sheet. (Def. SUF ¶ 60.) Kirkbride was disciplined as a result. (Def. SUF ¶ 61.)
In addition, the USMS requested in 2003 that MVM investigate allegations that Lead CSO Richard Malinowski ("Malinowski") made derogatory comments about women and African-Americans. (Def. SUF ¶ 71.) Carl Piro, then Site Supervisor for MVM in the District of New Jersey, investigated these allegations and determined that the allegations were in fact true. (Def. SUF ¶ 72.) As a result of the investigation, Malinowski was demoted from Lead CSO to a CSO. (Def. SUF ¶ 73.)

On January 12, 2005, Elcik wrote a letter to Lorenzoni requesting that Plaintiff not be permitted to return to any CSO position within the District of New Jersey.  (Def. SUF ¶¶ 44-45.) Between January 11, 2005 and January 19, 2005, Lorenzoni spoke with Jose Morales ("Morales") in MVM's Human Resources department regarding the appropriate discipline for Plaintiff.  (Def. SUF ¶ 49.)  Lorenzoni recommended, and Morales ultimately decided, that Plaintiff should be suspended and demoted.  (Def. SUF ¶¶ 50, 52.)

On February 1, 2005, Elcik wrote another letter to Lorenzoni, in which Elcik rescinded the USMS's request for Plaintiff's removal and instead requested that Plaintiff no longer hold the position of Lead CSO.  (Def. SUF ¶¶ 55-56.)  On February 4, 2005, Plaintiff received a memo from Lorenzoni informing Plaintiff that he was demoted from Lead CSO to CSO.  (Def. SUF ¶¶ 57-58.)

Plaintiff filed the instant Complaint on May 31, 2005 against MVM, Torriero, United States Marshal James Plousis ("Plousis"), and Chief Marshal Donald Rackley ("Rackley," and, collectively with MVM, Torriero, and Plousis, the "Defendants"), alleging that he was suspended and demoted in retaliation for his vocal opposition to Torriero's transfer.  Plaintiff's first cause of action, raised against the Defendants under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleges that Plaintiff suffered a violation of his First Amendment rights.  The second cause of action asserts that MVM violated the New Jersey Conscientious Employee Protection Act (NJ CEPA), codified at N.J. STAT. ANN. §§ 34:19-1 et seq.

In an Order dated April 5, 2006, this Court dismissed the second cause of action, noting that Plaintiff agreed to withdraw the NJ CEPA claim with prejudice.  On February 1, 2008, this

4

Court granted the motion to dismiss brought by Plousis and Rackley, and joined in by Torriero, regarding the first cause of action.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."

Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

### III.  ANALYSIS

In Bivens, the Supreme Court permitted a plaintiff to pursue a damages claim against federal officials that were alleged to have violated the plaintiff's Fourth Amendment rights while acting under color of federal law. 403 U.S. at 395-96. In so doing, the Court created an implied cause of action against federal officials alleged to have violated a citizen's constitutional rights. Id. Plaintiff's allegations against MVM in the instant case, however, attempt to apply the implied cause of action created in Bivens against a private corporation, as opposed to a federal official, purported to have acted under color of federal law.

The central issue in this case is whether a private corporation may be held liable in a Bivens action. The Supreme Court addressed this issue in Correctional Services Corporation v. Malesko, 534 U.S. 61 (2001). In Malesko, prison officials ordered a federal prisoner, diagnosed with a heart condition, to take the stairs to his fifth floor room, despite the prisoner's exemption from a policy requiring all inmates to use the staircase. 534 U.S. at 64. Upon climbing the stairs, the prisoner had a heart attack and fell, suffering injuries as a result. Id. The prisoner filed a complaint against Correctional Services Corporation, a private corporation under contract with the federal Bureau of Prisons to operate prison facilities, including the halfway house at which the plaintiff was imprisoned. Id. at 63-64.

The District Court, after construing the complaint as raising a Bivens claim, dismissed the case, reasoning that "a Bivens action may only be maintained against an individual . . . ." Id. at 65.  The Second Circuit reversed in part, holding that, although the Supreme Court expressly declined to expand Bivens claims to cover federal agencies, private entities should be subject to liability "to accomplish the . . . important Bivens goal of providing a remedy for constitutional violations."  Id. (quoting Malesko v. Corr. Svcs. Corp., 229 F.3d 374, 380 (2d Cir. 2000).

The Supreme Court dismissed the prisoner's claim, expressly declining to recognize a cause of action for damages against private entities acting under color of federal law.  Id. at 66.  The Court emphasized that, by suing the private company operating the prison facility, plaintiff "seeks a marked extension of Bivens, to contexts that would not advance Bivens' core purpose of deterring individual officers from engaging in unconstitutional wrongdoing." Id. at 74.  The Court also noted that its recent decisions "have responded cautiously to suggestions that Bivens remedies be extended into new contexts."  Id. at 68-69 (quoting Schweiker v. Chilicky, 487 U.S. 412, 421 (1988)); Malesko, 534 U.S. at 68.

The Supreme Court's holding in Malesko prohibits Plaintiff from sustaining a Bivens claim against MVM, a private corporation.  Accordingly, MVM is entitled to an entry of judgment in its favor.

## IV.  CONCLUSION

There are no genuine issues as to any material facts that must be resolved by a factfinder. However, Plaintiff may not bring a Bivens claim against MVM based on its alleged violation of Plaintiff's First Amendment rights.  For the reasons set forth above, MVM's motion for summary judgment will be granted.


Dated: February 21, 2008


                                        S/Joseph A. Greenaway, Jr.
                                        JOSEPH A. GREENAWAY, JR., U.S.D.J.